561 S.E.2d 654

**Augustus "Pete" HALL and Beverly J. Hall, Appellants,**

v.

**David A. FEDOR, Respondent.**

**No. 3464.**

Court of Appeals of South Carolina.

Heard March 6, 2002.

Decided March 25, 2002.

---

170

James R. Gilreath and William M. Hogan, both of Gilreath Law Firm, of Greenville; and H. Wayne Floyd, of West Columbia, for appellants.

Harry A. Swagart, III and Robert L. Reibold, both of Swagart, Walker & Reibold, of Columbia, for respondent.

ANDERSON, J.

Augustus "Pete" Hall was arrested in his home by Detective Larry Harrison of the Lexington County Sheriff's Department based on an informant's tip about a drug purchase involving

Hall. Hall brought a civil suit against Detective Harrison, seeking recovery for activities surrounding the arrest. David Fedor was co-counsel for Hall. Following resolution of the suit, Hall filed a legal malpractice claim against Fedor. Fedor moved for summary judgment, which the Circuit Court granted. Hall appeals the Circuit Court's grant of summary judgment. We affirm.

## *FACTS/PROCEDURAL BACKGROUND*

Police arrested Hall and seized $40,000 from his home based on information provided by an informant about a potential drug purchase transaction involving Hall. Hall retained Fedor to defend him on the criminal charges arising from the arrest. Fedor persuaded the solicitor to drop the criminal charges pending against Hall and secured the return of the $40,000 seized in the arrest.

Hall asked Fedor to handle a subsequent civil suit he wished to file against Detective Harrison, the law enforcement officer who arrested Hall and searched his home. Fedor refused to accept the case, but referred Hall to another attorney, Gaston Fairey. Fairey also refused to represent Hall. Hall retained Gary White to handle the case. Hall sued Harrison in federal district court, alleging abuse of process, malicious prosecution, and violation of civil rights. After the suit had progressed for nearly a year, Fedor agreed to represent Hall as co-counsel in the case.

The Insurance Reserve Fund offered a $10,000 settlement to Hall on behalf of Harrison a few days before trial. Hall refused this offer. The settlement offer then rose to $30,000, which Hall accepted. After he had accepted the settlement, Hall contended Fedor made misrepresentations to him: (1) that Fedor urged Hall to accept the settlement by stating the Insurance Reserve Fund was either not liable or would refuse to pay; and (2) that attorney Jim Anders said to Hall that as much as $250,000 was available for a settlement amount and Fedor knew about the higher amount. Hall heard that Fedor had told Fairey that Detective Harrison was "trying to put Hall out of the drug business." Fedor allegedly stated to others that "Hall was dealing drugs" and "Hall was guilty and lucky to avoid jail."

Hall filed a legal malpractice claim against Fedor based upon Fedor's alleged misconduct and negligence in his actions regarding the settlement agreement and Fedor's comment about Hall's guilt to third parties. Fedor moved for summary judgment. The Circuit Court granted the motion. Hall appeals.

## STANDARD OF REVIEW

Summary judgment is appropriate when it is clear there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Rule 56(c), SCRCP; *Baird v. Charleston County*, 333 S.C. 519, 511 S.E.2d 69 (1999); *Olson v. Faculty House of Carolina, Inc.*, 344 S.C. 194, 544 S.E.2d 38 (Ct.App.2001), *cert. granted; Vermeer Carolina's, Inc. v. Wood/Chuck Chipper Corp.*, 336 S.C. 53, 518 S.E.2d 301 (Ct.App.1999); *Young v. South Carolina Dep't of Corrections*, 333 S.C. 714, 511 S.E.2d 413 (Ct.App.1999); *see also Wells v. City of Lynchburg*, 331 S.C. 296, 501 S.E.2d 746 (Ct.App.1998) (stating that a trial court should grant motion for summary judgment when pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact and moving party is entitled to judgment as a matter of law).

In determining whether any triable issue of fact exists, the evidence and all inferences reasonably drawn therefrom must be viewed in the light most favorable to the nonmoving party. *Strother v. Lexington County Recreation Comm'n*, 332 S.C. 54, 504 S.E.2d 117 (1998); *Pye v. Aycock*, 325 S.C. 426, 480 S.E.2d 455 (Ct.App.1997). Summary judgment is not appropriate where further inquiry into the facts of the case is desirable to clarify the application of the law. *Tupper v. Dorchester County*, 326 S.C. 318, 487 S.E.2d 187 (1997); *Moriarty v. Garden Sanctuary Church of God*, 334 S.C. 150, 511 S.E.2d 699 (Ct.App.1999), *aff'd*, 341 S.C. 320, 534 S.E.2d 672 (2000). All ambiguities, conclusions, and inferences arising from the evidence must be construed most strongly against the moving party. *Young v. South Carolina Dep't of Corrections*, 333 S.C. 714, 511 S.E.2d 413 (Ct.App.1999). Even when there is no dispute as to evidentiary facts, but only

as to the conclusions or inferences to be drawn from them, summary judgment should be denied. *Id.*

On appeal, this Court reviews the grant of summary judgment using the same standard applied by the trial court. *Bray v. Marathon Corp.*, 347 S.C. 189, 553 S.E.2d 477 (Ct. App.2001), *cert. pending; see also Estate of Cantrell*, 302 S.C. 557, 559, 397 S.E.2d 777, 778 (Ct.App.1990) ("On appeal from summary judgment, the reviewing court must consider the facts and inferences in the light most favorable to the nonmoving party. The judgment may be affirmed only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.") (citations omitted).

## *LAW/ANALYSIS*

### I. Legal Malpractice Based on the Settlement Agreement Claim

 In South Carolina, the plaintiff in a legal malpractice suit must prove several elements:

(1) the existence of an attorney-client relationship;

(2) a breach of duty by the attorney;

(3) damage to the client; and

(4) proximate cause of the plaintiff's damages by the breach.

*McNair v. Rainsford*, 330 S.C. 332, 499 S.E.2d 488 (Ct.App. 1998); *Smith v. Haynsworth, Marion, McKay & Geurard*, 322 S.C. 433, 472 S.E.2d 612 (1996); *Henkel v. Winn*, 346 S.C. 14, 550 S.E.2d 577 (Ct.App.2001), *cert. denied.*

 Additionally, the plaintiff must generally establish the standard of care by expert testimony. *Smith*, 322 S.C. at 435, 472 S.E.2d at 613; *see also Mali v. Odom*, 295 S.C. 78, 80–81, 367 S.E.2d 166, 168 (Ct.App.1988) ("A plaintiff in a legal malpractice case must ordinarily establish by expert testimony the standard of care, unless the subject matter is of common knowledge to laypersons.") (citations omitted).

 Moreover, the plaintiff must show he or she "*most probably* " would have been successful in the underlying suit if the attorney had not committed the alleged malpractice. *Brown v. Theos*, 345 S.C. 626, 550 S.E.2d 304 (2001); *Summer v. Carpenter*, 328 S.C. 36, 492 S.E.2d 55 (1997); *Manning v.*

*Quinn,* 294 S.C. 383, 365 S.E.2d 24 (1988); *Floyd v. Kosko,* 285 S.C. 390, 329 S.E.2d 459 (Ct.App.1985).

In the case *sub judice,* Hall could satisfy the "most probably" requirement and defeat Fedor's summary judgment motion by establishing he "most probably" would have received a larger settlement than $30,000 or that he "most probably" would have prevailed on the underlying claim at trial.

To defeat Fedor's summary judgment motion, Hall offered: (1) his deposition testimony; (2) his wife's deposition testimony; and (3) deposition testimony and affidavit of Professor Gregory B. Adams, an expert witness, to establish the standard of care.

Use and admissibility of affidavit and deposition testimony to rebut a motion for summary judgment is governed by Rule 56(e), SCRCP and reads in pertinent part:

> Supporting and opposing affidavits shall be made on personal knowledge, [and] shall set forth such facts as would be ***admissible in evidence*** .... The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits.

(emphasis added).

██ Our appellate courts have interpreted Rule 56(e) to mean materials used to support or refute a motion for summary judgment must be those which would be admissible in evidence. *See Baughman v. American Tel. & Tel. Co.,* 306 S.C. 101, 410 S.E.2d 537 (1991); *Moon v. Jordan,* 301 S.C. 161, 390 S.E.2d 488 (Ct.App.1990); *Moss v. Porter Bros., Inc.,* 292 S.C. 444, 357 S.E.2d 25 (Ct.App.1987); *see also Hansen v. DHL Labs., Inc.,* 316 S.C. 505, 510, 450 S.E.2d 624, 627 (Ct.App.1994), *aff'd,* 319 S.C. 79, 459 S.E.2d 850 (1995) ("A genuine issue of fact ... can be created only by evidence which would be admissible at trial.") (citing, *inter alia,* Rule 56(e), SCRCP).

██ Hall states in his deposition Anders told him that as much as $250,000 was "on the table" to settle the case and that Fedor was aware of the higher amount. This statement is clearly hearsay and does not fall under any of the hearsay exceptions enumerated in the Rules of Evidence. Therefore,

it would be inadmissible evidence at trial and is inadmissible to refute a motion for summary judgment.

Hall additionally alleges Fedor lied when he told Hall the Insurance Reserve Fund was either not liable or would refuse to cover Harrison. During his deposition, Professor Adams testified that in order for a statement to constitute malpractice, it must result in damage to the client. Even if Hall were correct in his assertion that Fedor lied to him about the Insurance Reserve Fund's obligation or willingness to pay, he was not damaged because there is no evidence showing that he would have recovered more than $30,000 in a settlement with the insurer.

Once these two statements are eliminated from consideration, there is no evidence in the record to show that Hall "most probably" would have received in excess of $30,000 but for Fedor's alleged malpractice.

In contrariety, the evidentiary record demonstrates with remarkable clarity that the $30,000 amount was a good settlement, even to the point of reaching a windfall for Hall.

Richard Jerome Briebart, Detective Harrison's attorney, was asked: "Given your opinion as to the strength or lack of strength in [Hall's] case, would you characterize the $30,000 settlement as an average result, poor result, good result; how would you characterize it?" Briebart responded: "Being that this was a case which, in my professional opinion, I never would have brought, I think it was manna from heaven; that is, I think that they probably got $29,999.00 more than was deserved in the case. That is my particular opinion. I think it was an excellent result." Briebart testified he was not aware of any amount in excess of $30,000 being available to settle Hall's case.

When asked about the adequacy of the $30,000 settlement amount, Gary White, Hall's lead counsel, stated: "[C]onsidering the risk, I thought that was a pretty good settlement."

John Delgado, one of Fedor's expert witnesses, averred: "A $30,000 settlement, under the terms of what I understand the facts of this case to be, was a monumental victory. It seemed to me that that was a marvelous, unheard of victory that any

plaintiff's attorney would have been proud of, under the circumstances."

Indubitably, considering the absence of any admissible evidence presented by Hall, and in light of the evidence presented by Fedor, Hall failed to show he "most probably" would have received a settlement amount greater than $30,000.

■■■ Hall presents one argument to show he would have prevailed at trial. Hall states the willingness of the defendant to settle the case is evidence he would have prevailed at trial. Parties choose to settle cases for a plethora of reasons having nothing to do with the fear of the plaintiff succeeding at trial. In fact, the testimony in this case shows the settlement was offered as a cost saving measure on the part of the Insurance Reserve Fund. Briebart testified:

> [The Insurance Reserve Fund's attorney] indicated that the Insurance Reserve Fund thought [Hall's case] would be— that all these cases were expensive cases to defend in federal court. We were at the point where there was still additional discovery work to be done, important discovery work, and we thought that this case would take several days or a week or longer to try .... [The Insurance Reserve Fund's attorney] told me that he thought [Hall] could get a very, very small amount of money, kind of like a nuisance value, for want of a better word $5,000 or $10,000.... Finally, the case was able to be settled by the Insurance Reserve Fund paying $30,000, a sum ... which was less than anticipated for the costs and things that they faced.

Briebart stated he felt "looking at all the factors, the insurance company made an economic decision and a social one because pressure was being placed on them by the plaintiff to settle the case ... but also by their own insured."

Moreover, there was abundant testimony regarding the inadequacy of Hall's case and concerns over winning at trial.

Briebart testified he felt Hall was fortunate for his cause of action to survive summary judgment: "I think there was substantial questions about them being able to prevail, first, in summary judgment. I think they were fortunate to prevail in any portion there. In prevailing—for the record what I mean—if the case was to have gone to trial, whether or not the judge would have permitted the jury to consider those issues, whether to go to a non-suited or directed verdict."

White testified: "It was known from the time the suit was filed that we were going to have an uphill battle with a jury." White recalled that Fedor had told him he was not happy with the jury after jury selection had been completed.

In his affidavit, Delgado stated: "It is my opinion based upon my knowledge, training, and experience, that there was virtually no possibility that [Hall] would prevail in [his] case against [Detective] Harrison." Once again, Hall presented no evidence to show he "most probably" would have prevailed in the suit at trial, while evidence exists in the record to show he faced serious problems if the case went to trial.

The Circuit Court did not err when it granted Fedor's summary judgment motion concerning Fedor's alleged legal malpractice connected with the settlement agreement.

## II. Legal Malpractice Claim Based on Breach of Confidentiality

Hall claims Fedor committed legal malpractice by allegedly making statements to third parties. Fedor allegedly told Fairey that Detective Harrison was "trying to put Hall out of the drug business." Fedor also allegedly commented in front of others that Hall was "dealing drugs" and that "Hall was guilty and lucky to avoid jail."

Professor Adams testified in his deposition that if Fedor made the alleged statements, he would have breached his duty of confidentiality to Hall and thus would have committed malpractice. The Circuit Court noted these statements did not constitute legal malpractice; instead the court stated they were the basis of a defamation claim: "[S]ince Hall ... denied that he was a [drug] dealer, the statements allegedly made by Fedor would have been false. An attorney's duty, however, is not to disclose information learned during the course of the representation. RPC 1.6. Since false information is fabricated, not learned, the remedy for dissemination of such information is defamation, not malpractice." We do not reach the question of whether a defamation claim should have been brought because the statements were *inadmissible hearsay* and *cannot* be used to support a motion for summary judgment.

The testimony about Fedor's statement to Fairey comes from Hall's deposition where Hall avers Fairey told him Fedor

said Detective Harrison was trying to put Hall out of the "drug business." This statement was not made within Hall's personal knowledge as is clearly required by Rule 56(e) and is inadmissible hearsay. The other statements Fedor allegedly made to third parties about Hall also came from Hall's deposition testimony and are what the third parties told Hall Fedor had said to them. These statements are also not within Hall's personal knowledge and are inadmissible hearsay. Concomitantly, there is no admissible evidence in the record that shows Fedor breached his duty of confidentiality to Hall by allegedly making statements about Hall's guilt to third parties.

## CONCLUSION

In South Carolina, a plaintiff in a legal malpractice claim is required to prove he *"most probably"* would have been successful in the underlying litigation if the attorney had not committed the alleged malpractice. In regard to Hall's legal malpractice case based on the settlement agreement claim, there is *no* admissible evidence in the record to support Hall's burden of proof.

The breach of confidentiality claim fails because the evidence submitted is violative of the hearsay rule and is inadmissible.

Based on the foregoing, the order of the circuit judge is **AFFIRMED.**

CURETON and GOOLSBY, JJ., concur.