626 S.E.2d 25

**John DOE, Appellant,**

v.

**Gedney M. HOWE, III, and Gedney M. Howe, III, P.A., Respondents.**

**No. 4061.**

Court of Appeals of South Carolina.

Heard Nov. 7, 2005.

Decided Dec. 19, 2005.

Rehearing Denied Feb. 16, 2006.

434

Desa A. Ballard, of West Columbia, for Appellant.

A. Camden Lewis, of Columbia, M. Dawes Cooke Jr. and James H. Elliott Jr., both of Charleston; for Respondents.

GOOLSBY, J.:

This appeal involves claims by the appellant John Doe against the respondents Gedney M. Howe, III, and Gedney M. Howe, III, P.A., for legal malpractice and breach of fiduciary duty. The trial court granted summary judgment to Howe and his law firm. Doe appeals. We affirm the grant of summary judgment on Doe's action for legal malpractice, vacate the dismissal of Doe's action for breach of fiduciary duty, and remand the breach of fiduciary duty claim for a written order pursuant to our opinion in *Bowen v. Lee Process Systems Co.*[1]

## FACTS

We set forth the facts below, as we must, viewed in the light most favorable to Doe, the party against whom the trial judge granted summary judgment. We glean these facts from three sources: the allegations of the pleadings, the testimony given in depositions, and the statements of fact given in affidavits. We assume these facts are true only for the purpose of the summary judgment motion and determine merely whether they, when properly viewed, present triable issues.[2]

Doe, who was born September 2, 1962, is Howe's former client. From 1968 to 1980, Doe attended Porter–Gaud, a private school in Charleston. In 1977, Edward Fischer, a teacher at Porter–Gaud, began sexually molesting Doe. At the

---

1. *Bowen v. Lee Process Systems Co.*, 342 S.C. 232, 536 S.E.2d 86 (Ct.App.2000).

2. *See id.* at 238, 536 S.E.2d at 89 (footnotes omitted) (stating that findings of fact for the purpose of summary judgment "are not factual findings in the ordinary sense as contemplated in our rules of procedure" but "are statements made by the court as it views the evidence and its inferences in the light most favorable to the nonmoving party").

time, Doe was fourteen years old and in the ninth grade. Doe and Fischer continued to have sexual contact until 1982, two years after Doe became an adult and no longer attended Porter–Gaud.

Seventeen years later, in June 1999, Doe retained Howe and Howe's brother, Donald Howe, to represent him in an action against Porter–Gaud arising from the abuse Doe said Fischer inflicted upon him. Howe expressed concern to Doe early on that the statute of limitations presented a problem and could prevent Doe from recovering on any claim against Porter–Gaud.

Notwithstanding the statute of limitations, Porter–Gaud offered to settle Doe's claim. Based upon Howe's advice and without filing suit, Doe settled with Porter–Gaud for $88,000 in May 2000. A few months later, in October 2000, a parent of another of Fischer's victims received jury verdicts against Porter–Gaud and the estates of two former officials of the school totaling $105 million dollars. The attorneys who obtained these verdicts had also succeeded in defeating summary judgment on at least four occasions.

After learning of the verdicts, Doe contacted Donald Howe the following month to inquire about the possibility of rescinding his settlement with Porter–Gaud. According to Doe, Donald Howe knew of no way to set aside the settlement, but nevertheless agreed to talk with his brother about the matter. Doe stated he never received an answer to his inquiry from either Donald Howe or Gedney Howe.

The attorneys who obtained the multi-million dollar verdict later settled all the sexual abuse cases brought against the Porter–Gaud defendants, with each student claimant receiving an average of $2 million dollars each.

After Doe settled with Porter–Gaud, he discovered Howe had enrolled his son in Porter–Gaud during the time Howe had represented Doe. Doe also learned Howe had made significant financial contributions to Porter–Gaud since 1996. Howe never divulged to Doe these personal relationships with Porter–Gaud. In addition, Doe learned in 2001 that Howe represented Porter–Gaud in a bad-faith action against its insurer regarding payment of claims made by Fischer's victims and their parents.

Doe then brought the present action. The trial judge subsequently granted Howe's motion for summary judgment, holding that, because Doe's action against Porter–Gaud would have been untimely, Doe could not provide evidence that he " 'most probably' would have received a larger settlement than he did" or that "he 'most probably' would have prevailed on the underlying claim at trial."

In the same order, the trial judge denied a motion by Doe to recuse himself based on disclosures that (1) the judge had contacted Howe on an unrelated matter and (2) the judge's law clerk had applied for a position with the law firm of one of Howe's attorneys.

Doe filed this appeal after the trial judge denied his motion for reconsideration.

## DISCUSSION

1. Doe contends the trial judge abused his discretion in failing to disqualify himself.

At the conclusion of the summary judgment hearing, the trial judge invited counsel for both parties to his chambers to disclose that he had previously contacted Howe to inquire whom his wife should contact to apply for a position at the new Charleston School of Law. He did not, however, ask Howe to otherwise assist his wife in securing employment with the school and he did not know of anything that indicated Howe did in fact exercise any influence on her behalf.

Two days after the hearing, the judge also disclosed to attorneys for the parties that his law clerk had an employment application pending with the law firm representing Howe. He assured counsel he would not allow the law clerk to have any further involvement with the case for that reason.

In support of his claim of judicial prejudice in this case, Doe argues (1) he was highly suspicious and mistrustful of people and the legal system because of his victimization by Fischer, Porter–Gaud, and Howe; (2) the trial judge "gratuitously" included the issue of damages in his ruling; (3) Howe had already made an unsuccessful motion before another judge in this case for summary judgment on the ground of the running of the statute of limitations; and (4) the trial judge's, to quote

Doe's brief, "abhorrence" of deciding a matter involving an attorney influenced the judge's decision in this case.

■ As to the first contention, we are not aware of any decision recognizing the emotional fragility of a litigant as a ground for mandatory disqualification of a trial judge. Further, Doe cites no authority for this proposition in his brief. In any case, we hold the emotional fragility of a litigant, without more, provides no basis for disqualification of a judge.

■ As to the second contention, the mere fact that a judge includes an issue not raised by the parties does not indicate bias or prejudice. It is not at all unusual for a judge to include in an order an issue not raised by a party.[3] Besides, there are rules by which a party can challenge an order that includes matters not properly before the court.[4] The record does not suggest that Doe attempted to avail himself of these procedures.

■ As to the third contention, the fact that a judge would reach an outcome different from that reached by another judge does not give rise to an inference of prejudice. Judges differ all the time in their approach to the law. One need only look at the number of dissenting and concurring opinions that sometimes accompany appellate court decisions or at the number of times an appellate court reverses the decisions of other tribunals.[5]

■■ And as to the fourth contention, although the trial judge expressed a dislike of having to sit in judgment of lawyers, he also said "it is what judges must do." Judging others is not an easy task. Just because a judge may dislike

---

**3.** *See, e.g., Lake v. Reeder Constr. Co.,* 330 S.C. 242, 248, 498 S.E.2d 650, 653 (Ct.App.1998) ("Lack of subject matter jurisdiction can be raised at any time, can be raised for the first time on appeal, and can be raised *sua sponte* by the court.").

**4.** *See* Rule 52(b), SCRCP (regarding motions to amend findings by the trial court) and *id.* Rule 59(e) (regarding motions to alter or amend judgments).

**5.** *See Reading v. Ball,* 291 S.C. 492, 495, 354 S.E.2d 397, 399 (Ct.App. 1987) ("The fact a judge rules against a litigant is not proof of prejudice by the judge, even if it is later held the judge committed error in his ruling.").

having to make a decision in a particular kind of case does not translate into his or her being unable to make an impartial and well-reasoned decision. What every litigant has a right to expect from a judge is that he or she be fair [6] and, to paraphrase the inscription that appears on the seal of this court, he or she give the litigant his or her due, no more and no less. This we are satisfied the trial judge endeavored to do in this instance. His acknowledgment of the grave responsibility that judges have in deciding cases tells us as much.

██ "Under South Carolina law, if there is no evidence of judicial prejudice, a judge's failure to disqualify himself will not be reversed on appeal." [7] "It is not enough for a party to allege bias; a party seeking disqualification of a judge must show some evidence of bias or prejudice." [8]

Because Doe made no showing here of actual prejudice, we find no abuse of discretion in the trial judge's refusal to disqualify himself. If anything, the trial judge demonstrated sensitivity toward any concerns Doe might have had regarding his impartiality by voluntarily making full disclosure of his and his law clerk's contacts with Howe and Howe's counsel.

2. Doe contends the trial judge improperly granted summary judgment on the basis that his underlying cause of action was barred by the statute of limitations.

As we understand from his brief, Doe contends that, under Rule 56 of the South Carolina Rules of Civil Procedure and *Black v. Lexington School District No. 2*,[9] the question of whether the statute of limitations barred his underlying action was a matter for jury determination. He further contends evidence that "competent attorneys did, in fact, defeat summary judgment on the statute of limitations in cases exactly

---

**6.** *See Mallett v. Mallett*, 323 S.C. 141, 147, 473 S.E.2d 804, 808 (Ct.App.1996) ("It is axiomatic that the expectation of a fair and impartial tribunal is a basic tenet of all cherished notions of due process embodied in the United States Constitution.").

**7.** *Patel v. Patel*, 359 S.C. 515, 524, 599 S.E.2d 114, 118 (2004).

**8.** *Christensen v. Mikell*, 324 S.C. 70, 74, 476 S.E.2d 692, 694 (1996).

**9.** 327 S.C. 55, 488 S.E.2d 327 (1997).

like [his case]" was sufficient to create a genuine issue of material fact as to whether the statute of limitations was an insurmountable bar to his claim against Porter–Gaud. He makes no contention that a triable issue of fact exists regarding whether the statute of limitations would have been raised as an affirmative defense in the underlying action.[10]

We recognize, as Doe argues, the supreme court in *Black* stated "the issue of whether a defendant is estopped from claiming the statute of limitations is ordinarily a question of fact";[11] however, in the very same sentence in the opinion the court also noted that, nevertheless, "summary judgment is appropriate where there is no evidence of conduct on the defendant's part warranting estoppel."[12] We, too, hold that, although genuine issues of material fact regarding the applicability of the statute of limitations on an underlying case may prevent summary judgment on a legal malpractice action arising from that case, no such issues are present in this case.

To recover for legal malpractice, a plaintiff must prove the following: (1) the existence of an attorney-client relationship, (2) a breach of duty by the attorney, (3) damage to the client, and (4) proximate cause of the client's damages by the breach.[13] As to damages, the plaintiff must show he or she "most probably would have been successful in the underlying suit if the attorney had not committed the alleged malpractice."[14] The question of the success of the underlying claim, if suit had been brought, is a question of law.[15]

---

10. *See* Rule 8(c), SCRCP (listing the statute of limitations among the defenses a party "shall set forth affirmatively" in a responsive pleading).

11. *Black*, 327 S.C. at 61, 488 S.E.2d at 330.

12. *Id.*

13. *Brown v. Theos*, 345 S.C. 626, 629, 550 S.E.2d 304, 306 (2001); *Hall v. Fedor*, 349 S.C. 169, 174, 561 S.E.2d 654, 656 (Ct.App.2002).

14. *Summer v. Carpenter*, 328 S.C. 36, 42, 492 S.E.2d 55, 58 (1997).

15. *See Manning v. Quinn*, 294 S.C. 383, 386, 365 S.E.2d 24, 25 (1988) (holding in a legal malpractice case that the likelihood of success of action that the plaintiff alleged the defendant should have taken was a

Doe testified Fischer molested him from 1977 until 1982. Doe acknowledged he knew Fischer's actions were wrong when they occurred and said he had thought about what Fischer did to him at least once a day ever since the acts took place. Even assuming each act of molestation gave rise to a distinct cause of action, the statute of limitations would have expired in 1988, six years after the last act of molestation in 1982, and more than ten years before Doe even retained Howe, which occurred in 1999.

Because nothing in the record suggests that a dispute exists regarding any of the factual issues regarding the applicability of the statute of limitations in the underlying case, such as estoppel or some discrepancy as to the operative dates, we hold Doe's claim against Porter–Gaud, as a matter of law, had lapsed long before Howe undertook to represent him.[16] The trial judge, therefore, correctly concluded Doe could not, as a matter of law, prove his claim of legal malpractice against Howe because the underlying action would not have been successful in that the statute of limitations would have barred Doe from maintaining it.[17]

We further reject Doe's argument that, had he been aware of Howe's loyalties to Porter–Gaud, he would have dismissed Howe and hired another attorney who would have overcome the statute of limitations bar. This argument provides at best only a subjective assessment of the viability of Doe's underlying action against Porter–Gaud. The successful defeat of the statute of limitations defense in another case, even one involving a plaintiff who was substantially similar to Doe, does not

question of law "and decision of that question on summary judgment motion is appropriate").

**16.** *Cf. Doe v. Crooks,* 364 S.C. 349, 352, 613 S.E.2d 536, 538 (2005) (holding that, because the plaintiff's cause of action for sexual molestation had lapsed because of the expiration of the statute of limitations, it could not be "revived" by the enactment of a new statute of limitations that redefines the date at which the limitations period begins to run).

**17.** *See Kreutner v. David,* 320 S.C. 283, 285–86, 465 S.E.2d 88, 90 (1995) ("The date on which discovery should have been made is an objective, not subjective, question.").

create an issue of fact as to whether the statute of limitations had run on Doe's action against Porter–Gaud.[18]

3. Doe further argues the trial judge erred in concluding the expert opinions he presented did not create a genuine issue of material fact precluding summary judgment.

The opinions on which Doe relied came from Gregory B. Adams, a professor at the University of South Carolina School of Law, and J. David Flowers, a Greenville attorney.

According to Adams, (1) Howe had an obligation to disclose the relationship between himself and Porter–Gaud; (2) if Howe had informed Doe of the potential conflicts of interests regarding a lawsuit against Porter–Gaud, Doe would have retained the attorneys who were representing other plaintiffs suing Porter–Gaud; and (3) consequently, Doe would have shared in the lucrative settlement and recovered much more than what he agreed to accept on Howe's advice.

Aside from whether we now need to address the question related to Adams' affidavit because of our holding that the statute of limitations barred the underlying action, the question of whether the opinions offered by Adams created an issue of material fact in this case is not properly before us. The trial judge did not address the impact of Adams' statements, and Doe did not raise this issue in his motion for reconsideration.[19]

Turning to the statements from Flowers, we agree with the trial judge that this expert witness did not assert anything that would create an issue of material fact warranting denial of summary judgment in this case.

According to Flowers, "Doe most probably would have defeated Porter–Gaud's defenses if his case had been

18. *See* Wilburn Brewer, Jr., *Expert Testimony in Legal Malpractice Cases,* 45 S.C. L.Rev. 727, 766 (1994) ("Under the case-within-a-case concept, the test is objective. Therefore, the test is not what the outcome *would have been,* but rather what is *should have been.*").

19. *See Noisette v. Ismail,* 304 S.C. 56, 58, 403 S.E.2d 122, 124 (1991) (holding that, when the trial court does not explicitly rule on a question and the appellant fails to move to alter or amend the judgment on that ground, the issue is not properly before the court of appeals and should not be addressed).

filed and zealously pursued." In addition, Flowers noted that, until the present case, Porter–Gaud had been unsuccessful in obtaining dismissals of other claims arising from Fischer's misconduct. He further stated his opinion was "not 'mere speculation,'" but was "based on the record and experience of the prior litigation which lasted years, and on the defendants' apparently newfound belief in the strength of cases like Doe's."

The trial judge held Flowers' statements were insufficient to defeat Howe's summary judgment motion because Flowers never explicitly stated Doe most probably would have recovered more than the $88,000 he received in his settlement with Porter–Gaud. Doe takes issue with this holding, asserting he had to show only that he "most probably would have been successful" in the underlying action but for the alleged malpractice and therefore did not need expert testimony regarding the amount that he would have recovered. We disagree with both arguments.

Flowers based his statement that Doe most probably would have defeated Porter–Gaud's defenses on the experiences of other individuals who had asserted claims against Porter–Gaud. As we pointed out earlier, the success of other plaintiffs, even those who might be similarly situated to Doe, is not an objective criterion on which to base an assertion that, had Doe filed a lawsuit on his underlying claim against Porter–Gaud, he would have defeated the statute of limitations defense and prevailed at trial.[20]

We further agree with the trial judge's reliance on the fact that Flowers never stated "that Doe 'most probably' would have received more than the $88,000 he received in his settlement with Porter–Gaud." It appears to us that the trial judge, in citing this factor, was not imposing an additional requirement for Doe's *prima facie* case, but rather, was considering an alternative course through which Doe could avoid summary judgment.[21] As one commentator has aptly stated on this subject:

---

20. *See* Brewer, *supra* note 18.

21. *See Hall,* 349 S.C. at 175, 561 S.E.2d at 657 (noting the plaintiff in a legal malpractice case could defeat the defendant attorney's summary

The client's burden of establishing proximate cause in a legal malpractice action requires that he prove that he would have obtained a better result in the underlying matter if the attorney had exercised reasonable care. The burden does not necessarily compel the client to demonstrate that he would have won the underlying case. Rather, it is enough for the legal malpractice plaintiff to show that he has lost a valuable right; *e.g.*, the settlement value of the underlying case. Stated otherwise, "the client need not show a perfect claim. But the client must show at least that he has lost a probability of success as a result of the attorney's negligence." [22]

Doe's counsel herself commented during oral argument to this court that numerous factors, including the statute of limitations, are considered to determine the settlement value of a claim. Notably absent from the record in this case, however, is any mention of settlement value from Flowers or any other expert that was brought to the trial judge's attention.

As far as we can tell, the record contains only a "Gross Distribution" list showing that various claimants represented by other counsel each received approximately $2 million dollars following the initial verdict against the school. [23] But this list does nothing more than set forth factual information. Most certainly, the list does not constitute an opinion that Doe should have made a recovery similar to the other claimants. At best, it could serve, if at all, only as evidence that could have supported an opinion regarding the settlement value of Doe's claim. [24]

---

judgment motion by establishing that he most probably would have received a larger settlement than what he agreed to accept while represented by the defendant *or* that he most probably would have prevailed on the underlying claim had there been a trial).

**22.** David A. Barry, *Legal Malpractice in Massachusetts: Recent Developments*, 78 Mass. L.Rev. 74, 79 (1993) (footnotes omitted). The quoted language is from *Colucci v. Rosen, Goldberg, Slavet, Levenson & Wekstein*, 25 Mass.App.Ct. 107, 515 N.E.2d 891, 895 (1987).

**23.** The trial judge refused to consider this evidence on the grounds that it was not submitted in a timely fashion and was not in proper form.

**24.** *See* 31A Am.Jur.2d *Expert and Opinion Evidence* § 1, at 27 (2002) ("[A]n expert's purpose is to provide an opinion about a disputed issue.").

4. Finally, Doe argues his inability to maintain his cause of action for legal malpractice should not bar him from proceeding on his breach of fiduciary duty claim.

The trial judge, as we interpret his order, dismissed both the legal malpractice claim and the breach of fiduciary duty claim because he viewed the record as presenting no triable issue of fact regarding whether Doe would have recovered more by either trial or settlement than $88,000 if he had retained a different lawyer or if Howe had represented him more "zealously."

Doe followed up with a post-hearing Rule 59(e) motion in which he contended, among other things, he could pursue a cause of action for breach of fiduciary duty without establishing that he would have succeeded on the underlying claim on which the legal malpractice action was based. The trial judge denied Doe's motion in a summary order without further discussion of Doe's right to maintain an action for breach of fiduciary duty.

In *Bowen v. Lee Process Systems Co.*, this court stated the following regarding the trial court's responsibility when issuing a summary judgment order:

On appeal from the grant of summary judgment, an appellate court must determine whether the trial court's stated grounds for its decision are supported by the record. It is our duty to undertake a thorough and meaningful review of the trial court's order and the entire record on appeal. Where, as here, the trial court fails to articulate the reasons for its action on the record or enter a written order outlining its rationale, we simply cannot perform our designated function.[25]

Considering all the relevant circumstances, we do not fault the trial judge for his summary handling of Doe's post-hearing motion. We are mindful of the demands on trial judges, especially when back-to-back scheduling of nonjury matters occurs. We also recognize that, early on in the present case, the trial judge, in a conscientious effort to prevent a potential conflict of interest from tainting his decision, instructed his law clerk not to participate in the proceedings, thereby relin-

---

**25.** *Bowen*, 342 S.C. at 235–36, 536 S.E.2d at 87–88.

quishing assistance that would normally have been available to adjudicate a difficult and emotionally driven lawsuit. Moreover, in all fairness to the trial judge, we acknowledge that, after our decision in *Bowen,* we stated in *Clark v. South Carolina Department of Public Safety* that "there is no blanket requirement that the trial court set forth a separate explanation on all of its rulings on post-trial motions." [26]

The order at issue in *Clark,* however, had been issued pursuant to post-trial motions following a hearing on the merits. Of even greater significance is the fact that the reasoning behind the denial of the post-trial motions was discernible from the record on appeal. In contrast, we are unable to glean any "stated grounds" in this case from either the order denying reconsideration or the record on appeal as to why the trial judge rejected Doe's arguments concerning his breach of fiduciary duty claim. At this point, we can only speculate about the reason the trial judge determined Doe could not proceed on this claim. Despite a number of possible explanations [27] as to why the trial judge held as he did, we are

---

**26.** *Clark v. South Carolina Dep't of Pub. Safety,* 353 S.C. 291, 312, 578 S.E.2d 16, 26 (Ct.App.2002), *aff'd,* 362 S.C. 377, 608 S.E.2d 573 (2005).

**27.** Summary judgment on Doe's claim for breach of fiduciary duty claim could conceivably have been based on the trial judge's reaffirmation of his earlier holding that Doe's failure to show he would most probably have recovered a larger settlement than he did recover but for Howe's alleged acts and omissions doomed the breach of fiduciary duty claim. *Cf. General Sec. Ins. Co. v. Jordan, Coyne & Savits, LLP,* 357 F.Supp.2d 951, 961–62 (E.D.Va.2005) (holding that certain claims for breach of contract and breach of fiduciary duty were "mere disguises for the plaintiffs' legal malpractice claims" because the breach alleged in both was "the same failure to provide adequate legal services that [was] the crux of the legal malpractice claims"); *Majumdar v. Lurie,* 274 Ill.App.3d 267, 210 Ill.Dec. 720, 653 N.E.2d 915, 921 (1995) ("[W]hen ... the same operative facts support actions for legal malpractice and breach of fiduciary [duty] resulting in the same injury to the client, the actions are identical and the later should be dismissed as duplicative."). *But see* Mark J. Fucile, *Why Conflicts Matter,* 48–SEP *Advocate (Idaho) 23,* 23–24 (2005) (stating that, even though a lawyer can perform "flawlessly in a technical sense," if the services "result in damage to a client flowing from a conflict, the client has a remedy against the lawyer under a theory of breach of fiduciary duty").

The dismissal could also have been based on one or more other grounds, including, but not limited to the following: (1) damages from emotional distress are not recoverable under a breach of fiduciary duty

reluctant to pass judgment on his ruling based on mere conjecture as to how he reached his decision.

We therefore vacate the dismissal of the breach of fiduciary duty cause of action and remand the matter to the trial judge for an order "identifying the facts and accompanying legal analysis on which [he] relied" [28] to enable a meaningful appellate review of this issue.

**AFFIRMED IN PART, VACATED AND REMANDED IN PART.**

BEATTY and SHORT, JJ., concur.

---

claim. *See Aller v. Law Office of Schriefer*, No. 04CA0003 —— P.2d ——, ——, 2005 WL 1773878 at *5 (Colo.Ct.App. July 28, 2005) ("[T]he purposes of limiting damages in attorney negligence cases should apply to cases involving breach of fiduciary duty. Litigation inherently causes a client to suffer emotional distress, and to allow damages for such distress would escalate the cost of practicing law."); *Suppressed v. Suppressed*, 206 Ill.App.3d 918, 151 Ill.Dec. 830, 565 N.E.2d 101, 106 (1990) (stating that to allow an action for breach of fiduciary duty based on emotional harm alone "would be opening the door to any number of malpractice actions brought by clients who may have been less than satisfied with their legal representation but can point to no specific harm other than their own emotional distress"); (2) Doe's claim for breach of fiduciary duty was defective as a matter of law because he failed to plead the operative facts to support recovery of the particular damages he claimed to have suffered as a result of the alleged breach, namely, emotional distress, anxiety, fear, loss of trust, and loss of enjoyment of life; (3) the evidence in the record, viewed in the light most favorable to Doe, failed to support a finding that Howe breached a fiduciary duty to Doe; (4) Doe could not, as a matter of law, show that any alleged breach by Howe of a fiduciary duty was the proximate cause of the emotional distress he claimed to have suffered; (5) emotional injuries would not be recoverable absent evidence that Doe sustained pecuniary losses as well.

**28.** *Bowen*, 342 S.C. at 241, 536 S.E.2d at 91.