**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

Carolyn Mitchell Powell, Appellant,

v.

Ashlin Blanchard Potterfield; J. Michael Taylor; Taylor/Potterfield; Golden, Taylor, Potterfield and Barron; Reid Smith; and Price, Bird & Smith, P.A., Defendants,

Of whom Ashlin Blanchard Potterfield, J. Michael Taylor, and Taylor/Potterfield are the Respondents.

Appellate Case No. 2012-212678

———————————

Appeal from Lexington County
The Honorable R. Knox McMahon, Circuit Court Judge

———————————

Unpublished Opinion No. 2014-UP-114
Heard January 8, 2014 – Filed March 19, 2014
Withdrawn, Substituted and Refiled April 30, 2014

———————————

**AFFIRMED IN PART AND REVERSED IN PART**

———————————

Thomas A. Pendarvis and Catherine Brown Kerney, of
Pendarvis Law Offices, P.C., of Beaufort, for Appellant.

Charles E. Hill and R. Hawthorne Barrett, of Turner
Padget Graham & Laney, P.A., of Columbia, for
Respondents.

---

**PER CURIAM:** In this legal malpractice case, Appellant Carolyn Powell (Client) seeks review of the circuit court's order granting summary judgment to Respondents Ashlin Potterfield and Michael Taylor (Attorneys) and Respondent Taylor/Potterfield. Client argues (1) the circuit court erred in concluding that Client failed to present a scintilla of evidence on the damages element of her malpractice claim; (2) the circuit court erred in overlooking the evidence of damages on Client's breach of fiduciary duty claim; (3) Client's failure to complete discovery precluded summary judgment; and (4) the circuit court misstated or misapprehended critical factual allegations. We affirm in part and reverse in part.

1. As to Client's assertion that her failure to complete discovery precluded summary judgment, we disagree.

"A party claiming summary judgment is premature because they have not been provided a full and fair opportunity to conduct discovery must advance a good reason why the time was insufficient under the facts of the case, and why further discovery would uncover additional relevant evidence and create a genuine issue of material fact." *Guinan v. Tenet Healthsystems of Hilton Head, Inc.*, 383 S.C. 48, 54-55, 677 S.E.2d 32, 36 (Ct. App. 2009).

As early as January 2007, Client had chosen a forensic accountant to help identify any hidden assets of Husband. However, rather than complete the hiring process to retain this expert, Client entered into the settlement agreement that she now challenges as inadequate. Further, the settlement agreement provided indemnification for Client for any financial detriment resulting from Husband's nondisclosure or inaccurate disclosure of his income, assets, or obligations. Therefore, any evidence of such nondisclosure or inaccurate disclosure was not material to the damages element of her malpractice claim.

Moreover, as of the date of the summary judgment hearing, March 16, 2012, the case had been pending in circuit court since December 11, 2009, over two years. During that time period, the parties engaged in extensive discovery. Nonetheless, Client failed to present any concrete information indicating that further discovery would uncover evidence showing she could have obtained a larger settlement than the one she received.

Based on the foregoing, summary judgment was not premature.

2. As to the damages element of Client's malpractice claim, we affirm in part and reverse in part.

"A plaintiff in a legal malpractice action must establish four elements: (1) the existence of an attorney-client relationship, (2) a breach of duty by the attorney, (3) damage to the client, and (4) proximate causation of the client's damages by the breach." *RFT Mgmt. Co., L.L.C. v. Tinsley & Adams L.L.P.*, 399 S.C. 322, 331, 732 S.E.2d 166, 170 (2012) (citations omitted). "As to damages, the plaintiff must show he or she 'most probably would have been successful in the underlying suit if the attorney had not committed the alleged malpractice.'" *Doe v. Howe*, 367 S.C. 432, 442, 626 S.E.2d 25, 30 (Ct. App. 2005).[1] To satisfy the "most probably" standard, a legal malpractice claimant may show either that he most probably would have prevailed in court in the underlying action or that he most probably would have received a larger settlement than the settlement he actually received in the underlying action. *See Hall v. Fedor*, 349 S.C. 169, 175, 561 S.E.2d 654, 657 (Ct. App. 2002) ("In the case sub judice, [the plaintiff] could satisfy the 'most probably' requirement and defeat [the defendant's] summary judgment motion by establishing he 'most probably' would have received a larger settlement than $30,000 *or* that he 'most probably' would have prevailed on the underlying claim at trial." (emphasis added)).

---

[1] This standard has also been referenced as applying to the causation element of a malpractice claim. *See Harris Teeter, Inc. v. Moore & Van Allen, PLLC*, 390 S.C. 275, 289-90, 701 S.E.2d 742, 749 (2010) (holding that the plaintiff's second expert failed to satisfy the "most probably" standard and thereby failed to establish that the defendants' alleged acts of professional negligence were the "but for" cause of the plaintiff's loss).

The "most probably" standard is not compromised by the "scintilla of evidence" standard for surviving a summary judgment motion.[2]  In other words, the scintilla standard speaks to the quantity of evidence needed to survive a summary judgment motion, but the evidence must still possess the quality of meeting the legal standard applying to the element in question.  For example, in *Harris Teeter, Inc. v. Moore & Van Allen, PLLC*, our supreme court concluded that a legal malpractice plaintiff's presentation of deposition testimony of two experts failed to present a scintilla of evidence of either a breach of the standard of care or proximate cause.  390 S.C. at 289, 701 S.E.2d at 749.

Specifically, the court cited (1) the first expert's "circular opinion" regarding the standard of care; (2) the first expert's speaking "only in generalities" when he gave his opinion that the underlying case was not properly presented; (3) the second expert's failure to establish the standard of care; and (4) the second expert's failure to satisfy the "most probably" standard, thereby failing to establish that the defendants' alleged acts of professional negligence were the "but for" cause of plaintiff's loss.  *Id.* at 289-91, 701 S.E.2d at 749-50.  As to the "most probably" standard, the court explained:

> Instead of stating that the [defendants'] conduct most probably caused the outcome, [the second expert] said, 'had [Respondents] done these things, the percentage of success would have been greater.'  Thus, [the second expert's] deposition did not establish that the [defendants'] actions were the "but for" cause of [the plaintiff's] loss.

*Id.* at 290, 701 S.E.2d at 749.  Because the evidence presented did not meet the applicable legal standards, it did not qualify as even a scintilla of evidence.  *Id.* at 289, 701 S.E.2d at 749.

Here, in its order granting summary judgment, the circuit court concluded that neither of Client's experts stated an opinion that met the requirements of *Hall* and *Doe*.  Likewise, in its order denying reconsideration, the circuit court again stated that Client presented no expert testimony indicating that Client most probably

---

[2] *See Hancock v. Mid-S. Mgmt. Co.*, 381 S.C. 326, 330, 673 S.E.2d 801, 803 (2009) ("[I]n cases applying the preponderance of the evidence burden of proof, the non-moving party is only required to submit a mere scintilla of evidence in order to withstand a motion for summary judgment.").

would have received more than what she actually received had Attorneys exercised reasonable care. In response to this statement, Client asserts that the law does not require a plaintiff to provide expert evidence on the damages element of a legal malpractice claim, and, thus, the circuit court erred in imposing such a requirement. Client argues that no expert is needed to show those damages that exist as a matter of law.

There is no South Carolina precedent setting forth a per se requirement for expert evidence on the elements of causation or damages. In fact, in *Manning v. Quinn*, the question of the success of the underlying claim was a question of law. 294 S.C. 383, 386, 365 S.E.2d 24, 25 (1988). By simply referencing its prior precedent, our supreme court could readily determine that the plaintiff would not be successful in the underlying action even if the defendant had presented the argument suggested by plaintiffs. *Id.* ("In effect, appellants assert that respondent should have been able to somehow convince a circuit court that the Department's time for appeal started to run on June 12, 1979. That time-for-appeal argument has been expressly rejected by this Court.").[3]

Nonetheless, the burden of showing causation and damages remains the same whether the evidence is generated by an expert or not. Regardless of the type of evidence used, it must show that had Attorneys exercised reasonable care, the plaintiff (1) most probably would have prevailed on the underlying claim in court, or (2) most probably would have received a more valuable settlement than the settlement she actually received. Such a determination would be based on an objective standard, i.e., what the outcome should have been. *See Doe*, 367 S.C. at 444 n.18, 626 S.E.2d at 31 n.18 (quoting Wilburn Brewer, Jr., *Expert Testimony in Legal Malpractice Cases*, 45 S.C. L. Rev. 727, 766 (1994)) ("Under the case-within-a-case concept, the test is objective. Therefore, the test is not what the outcome would have been, but rather what [it] should have been.").

Here, Client asserts that she would have received a more valuable divorce settlement, or a better result in court, than the settlement package she actually received had Attorneys exercised reasonable care. Client's expert, Dr. Gregory B.

---

[3] *See also Doe*, 367 S.C. at 443, 626 S.E.2d at 30 ("Because nothing in the record suggests that a dispute exists regarding any of the factual issues regarding the applicability of the statute of limitations in the underlying case, such as estoppel or some discrepancy as to the operative dates, we hold Doe's claim against Porter-Gaud as a matter of law, had lapsed long before [defendant] undertook to represent him.").

Adams, stated that Client sustained "loss of substantial value of the marital estate and her share of it due to the dissipation, transfer, and secreting of much of it by her husband during the pendency of the divorce litigation." However, Client has not presented evidence indicating the existence of any income or assets controlled by Husband that she was not already aware of when she signed the settlement agreement. Further, the settlement Client actually received includes the contractual right to indemnification from Husband for any financial detriment due to any non-disclosure or inaccurate disclosure of Husband's income, assets, or obligations. Because she is protected by this valuable right, Client cannot claim that Attorneys' failure to perform a more extensive investigation of Husband's income, assets, and obligations caused her any permanent loss.

Client also asserts that she most probably would have obtained permanent alimony had Attorneys properly counseled her concerning dating.[4] As to permanent alimony, such an award is within the family court's discretion after considering the following factors: (1) the duration of the marriage together with the ages of the parties at the time of the marriage and at the time of the marital litigation; (2) the physical and emotional condition of each spouse; (3) the educational background of each spouse; (4) the employment history and earning potential of each spouse; (5) the standard of living established during the marriage; (6) the current and reasonably anticipated earnings of both spouses; (7) the current and reasonably anticipated expenses and needs of both spouses; (8) the marital and nonmarital properties of the parties, including those apportioned to him or her in the divorce or separate maintenance action; (9) custody of the children; (10) marital misconduct or fault of either or both parties; (11) the tax consequences to each party as a result of the particular form of support awarded; (12) the existence and extent of any support obligation from a prior marriage or for any other reason of either party; and (13) such other factors the court considers relevant. S.C. Code Ann. § 20-3-130(C) (Supp. 2013).

In light of these numerous factors and the discretionary nature of an alimony award, Client has not carried her burden of convincing this court that she most probably would have obtained permanent alimony had Attorneys properly counseled her. *See Lewis v. Lewis*, 392 S.C. 381, 385, 709 S.E.2d 650, 652 (2011)

---

[4] Prior to the execution of the settlement agreement, Husband filed with the family court an affidavit stating that by her own admission, Client had committed adultery. Husband attached to his affidavit an excerpt from a deposition of Client that was taken during the pendency of the divorce litigation. In this deposition, Client identified an individual with whom she had intimate relations.

(holding that the burden is upon the appellant to convince this court that the trial court erred in its findings).  By the time Client signed the settlement agreement, she had already received at least $679,000.00 in lump sum payments from Husband, most of these funds serving as advances on property distribution.  She also received from the property distribution real estate for which Husband paid $682,500.00 in 2001, along with $20,000 for "renovations/repairs" to this property; Husband's payment of monthly child support in the amount of $5,000.00, of which $3,751.00 was to be attributed to property distribution;[5] and Husband's payment for Client's medical insurance for up to 8 months.  In light of these resources and her ability to earn income as a professional designer, we are reluctant to conclude that Client **most probably** would have received an award of permanent alimony had Attorneys exercised reasonable care.

Based on the foregoing, we affirm summary judgment on Client's malpractice claim as it pertains to property division and permanent alimony.  *See* Rule 220(c), SCACR ("The appellate court may affirm any ruling, order, decision or judgment upon any ground(s) appearing in the Record on Appeal.").

As to Client's assertion that she would have received separate maintenance and support during the pendency of the divorce litigation had Attorneys sought this relief, we agree.  As with permanent alimony, an award of separate maintenance and support is within the family court's discretion after considering the factors listed in section 20-3-130(C).  However, at the beginning of her separation from Husband, Client did not have access to the funds she later received as advances on property distribution.  Further, while Husband eventually provided ample funds for many, if not most, of Client's expenses, this primary source of her income did not possess the stability that court-ordered separate maintenance and support would have possessed.  When we view the evidence in the light most favorable to Client, it shows that she most probably would have received court-ordered separate maintenance and support, along with the stability that comes with a court award enforceable by contempt, had Potterfield obtained a temporary hearing to pursue this relief soon after Husband left the marital home.  Therefore, we reverse summary judgment on Client's malpractice claim as it pertains to her loss of court-ordered separate maintenance and support.

---

[5]  After twelve months, the child support/property distribution payment was to decline to $1,500.00 until the youngest child of the marriage graduated from high school.

3.  As to Client's breach of fiduciary duty claim, a review of Client's Complaint shows that this claim arose out of the duty created by the attorney-client relationship.  Further, paragraphs 70 and 84 of the Complaint show that the breach of fiduciary duty claim was based on the same material facts on which the malpractice claim was based.  Therefore, Client's breach of fiduciary duty claim is duplicative of the legal malpractice claim.  *See RFT Mgmt.*, 399 S.C. at 336-37, 732 S.E.2d at 173 (holding that the plaintiff's breach of fiduciary duty claim was duplicative of its legal malpractice claim and, hence, the trial court did not err in merging the two claims, because the plaintiff did not set forth any specific facts showing that the fiduciary duty claim arose out of a duty other than one created by the attorney-client relationship or was based on different material facts).

As to the remedy of disgorgement, Client did not seek this remedy in either her Complaint or her Rule 59(e) motion.  Therefore, Client did not squarely present this precise issue to the circuit court despite two opportunities to do so.  Because the circuit court was not given the opportunity to determine whether this remedy would preclude summary judgment, this court may not now reach the issue.  *See Elam v. S.C. Dep't of Transp.*, 361 S.C. 9, 23, 602 S.E.2d 772, 779-80 (2004) ("Issues and arguments are preserved for appellate review only when they are raised to and ruled on by the lower court.").

4.  As to Client's remaining arguments, we affirm pursuant to Rule 220(b) and the following authorities:  Rule 220(c), SCACR ("The appellate court may affirm any ruling, order, decision or judgment upon any ground(s) appearing in the Record on Appeal."); *Hansson v. Scalise Builders of S.C.*, 374 S.C. 352, 357, 650 S.E.2d 68, 71 (2007) ("The plain language of Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof." (citations and quotation marks omitted)); *Judy v. Judy*, 384 S.C. 634, 646, 682 S.E.2d 836, 842 (Ct. App. 2009) ("Generally, appellate courts will not set aside judgments due to insubstantial errors not affecting the result.").

**AFFIRMED IN PART and REVERSED IN PART**.

**HUFF, GEATHERS, and LOCKEMY, JJ., concur**.