# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

Cynthia Holmes, M.D., Appellant,

v.

Haynsworth, Sinkler & Boyd, P.A., successor to Sinkler
& Boyd, P.A., Manton Grier and James Y. Becker,
Respondents.

Appellate Case No. 2010-154986

Appeal from Charleston County
Thomas L. Hughston, Jr., Circuit Court Judge

Opinion No. 27395
Heard October 16, 2012 – Filed June 4, 2014

**AFFIRMED**

Chalmers Carey Johnson, of Tacoma, Washington, for
Appellant.

Richard S. Dukes, Jr., of Charleston, and R. Hawthorne
Barrett, of Columbia, both of Turner, Padget, Graham &
Laney, P.A., for Respondent.

**CHIEF JUSTICE TOAL:**     Cynthia Holmes, M.D. (Appellant) appeals the
circuit court's grant of a directed verdict with respect to her malpractice claim in
favor of Haynsworth, Sinkler & Boyd, P.A. (Haynsworth), Manton Grier, and
James Y. Becker (collectively Respondents), and award of sanctions against her.
We affirm.

Appellant, an ophthalmologist currently in private practice in Sullivan's Island, South Carolina, was previously a member of the consulting medical staff of Tenet HealthSystem Medical, Incorporated, d/b/a East Cooper Community Hospital, Incorporated (the Hospital).[1] On September 10, 1997, Appellant lost her privileges to admit patients and perform procedures at the Hospital. Appellant engaged Respondents to represent her in a legal action against the Hospital on May 5, 1998. On Appellant's behalf, Respondents pursued an unsuccessful appeal for reinstatement of full admitting privileges through the Hospital's administrative process, which was exhausted in October 1998.

In March 1999, Respondents filed a lawsuit in federal court on Appellant's behalf, alleging violations of the Sherman Anti-Trust Act, 15 U.S.C. §§ 1, *et seq.* (2004), as well as pendant state law claims.[2] Respondents filed a request for temporary injunction, which would permit Appellant to perform medical procedures at the Hospital. On November 22, 1999, the United States District Court for the District of South Carolina granted a temporary injunction reinstating Appellant's admitting privileges based, in part, on Appellant's averments in an affidavit that her patients needed urgent surgeries and her inability to perform surgery at the hospital was causing her to lose patients. However, because Appellant did not perform a single surgery in the wake of the temporary injunction, the district court dissolved the injunction on January 25, 2000, because "the alleged harm suffered by [Appellant's] current patients had not materialized."[3] Furthermore, the district court held that Appellant and Respondents failed to comply with the scheduling order and the rules of discovery. Appellant blames Respondents for the dissolution of the injunction, claiming that Respondents did not act with due diligence on her behalf because she disputed their fees and refused to pay her legal bills. Respondents, however, attribute the dissolution of the

---

[1] Appellant also holds a license to practice law in South Carolina, but has not practiced in nearly thirty years with the exception of representing herself in litigation related to this matter.

[2] According to Respondent Becker, he initially advised Appellant to file the lawsuit in state court, but she insisted on filing the federal action.

[3] Respondent Becker testified at trial that Respondents did not appeal the dissolution because an appeal would have been futile.

injunction to Appellant's failure to utilize the injunction to perform surgery while it was in place and her lack of cooperation during discovery.[4]

As the federal case began in earnest, a fee dispute arose between Appellant and Respondents, resulting in Respondents filing a motion to be relieved as counsel. Respondent Becker testified that the relationship broke down due to communication issues between the parties, Appellant's continued mischaracterization of the parties' engagement agreement as a contingency agreement, and Appellant's refusal to pay her legal bills. Appellant alleges that Respondents agreed to take the case on a contingency fee basis once the preliminary injunction was successfully in place. However, the engagement letter states that "[f]ees generally are based on the time spent rounded up to the nearest tenth of an hour."[5] In addition, correspondence from Respondents to Appellant confirms that Respondents would not take the case on a contingency basis.[6]

---

[4] For example, Respondent Becker testified that Appellant cancelled her deposition two days before it was to be held without reason and withheld documents from Respondents that would have assisted them in their representation of Appellant.

[5] The engagement letter set forth the terms of the parties' agreement and was signed by Appellant and Respondent Becker.

[6] For example, in a letter dated December 15, 1999, Respondent Becker wrote:

> What I meant to convey to you [Appellant] in prior conversation was that I would seriously consider and seek the necessary internal firm approval for converting your matter to contingency fee basis for any fees to be incurred past the preliminary injunction stage. This process would involve first seeking management committee approval to do so. The second step would be making my own decision in consultation with other lawyers in the firm . . . . [However,] [n]either I nor other litigators in the firm believe that we should proceed on contingency fee basis.
>
> We will not proceed forward on a contingency fee basis . . . .

Likewise, in a December 27, 1999, letter to Appellant, Respondent Becker stated unequivocally, "We have clarified and you understand that we are not representing you on a contingent fee basis."

However, on January 25, 2000, Respondents withdrew the motion because the parties were able to resolve the dispute through the execution of an addendum to the engagement letter (the Addendum), setting forth the terms of Respondents' engagement moving forward.  In the Addendum, Appellant agreed to pay $43,000 in attorney's fees upfront, and pay any addition legal fees incurred at an hourly rate.[7]

On January 31, 2000, Appellant filed a pro se motion requesting the district court reconsider the dissolution of the preliminary injunction.  In this motion, she also indicated she was dissatisfied with Respondents' representation and was critical of how Respondents had handled her case to that point and sought additional time to obtain substitute counsel and complete discovery.  Because Appellant still refused to pay her legal bills, on February 2, 2000, Respondents filed a motion to be relieved as counsel.

On April 17, 2000, the district court granted summary judgment in the Hospital's favor, and dismissed the pendant state law claims without prejudice. Pursuant to the terms of the engagement letter, Respondents did not appeal this decision and chose not to proceed in representing Appellant in any state action.[8]

---

[7] Appellant claims that the "[A]ddendum called for [Appellant] to pay [Respondents] $43,000.00 in fees, to be used if the case against [the Hospital] went to trial . . . . [, and that Respondents] never did represent [Appellant] in a trial, but failed to return the $43,000.00 in fees that [Appellant] had paid in advance for trial."  However, the Addendum establishes that Appellant owed an outstanding unpaid balance of $19,471.44 and required Appellant to pay $15,000 upfront and "$25,000 now on account," and explicitly specified that fees "through the completion of discovery period and arguing of summary judgment motions will not exceed $25,000."  The Addendum does not state that the remaining fees would be used only in the event the case went to trial.

[8] Appellant filed a pro se appeal from the district court's decision in the United States Court of Appeals for the Fourth Circuit, which was dismissed on November 17, 2000.  She subsequently sought a writ of certiorari from the United States Supreme Court, which was denied on October 1, 2001.  Ultimately, Appellant pursued a claim in state court with different representation that resulted in a settlement agreement with the Hospital in 2003.  Appellant subsequently sued counsel in that action for malpractice, as well.  That action was dismissed.

After Respondents and Appellant ended their professional relationship, Appellant sought the return of the $43,000 in attorney's fees she paid pursuant to the Addendum. Respondents refused, and on April 1, 2002, Appellant filed a Complaint alleging professional malpractice in handling her federal antitrust claims. She also included claims for breach of contract, quantum meruit, breach of fiduciary duty, violation of the Unfair Trade Practices Act, abandonment, civil conspiracy, promissory estoppel, constructive fraud, conversion, negligent misrepresentation, negligent supervision, fraud, and misrepresentation. However, Appellant did not deliver copies of the Summons and Complaint to the Richland County Sheriff's Department for service upon Respondents Becker and Grier until April 30, 2003.

Appellant filed her Summons and Complaint in Charleston County, and Respondents successfully moved to transfer venue to Richland County on July 24, 2002. Appellant appealed that decision on March 12, 2003. On May 1, 2003, the court of appeals dismissed the appeal as interlocutory. Appellant filed a petition for rehearing, which was denied on June 16, 2003. Appellant subsequently filed a petition for a writ of certiorari in this Court, which was denied on April 8, 2004. Appellant filed a petition for rehearing regarding the denial of certiorari, and remittitur was issued on April 22, 2004. Appellant filed a "Motion to Reinstate the Appeal" and a "Petition for Original Jurisdiction" on April 23 and April 26, 2004, respectively. After this Court refused to accept the first petition, Appellant filed a second petition for original jurisdiction. This Court denied the petition on June 9, 2004. Appellant then filed a petition for rehearing en banc, which the Court denied.

On August 17, 2004, the circuit court ordered Appellant, who had been attempting to proceed under a "J. Doe" pseudonym to proceed under her real name. On September 24, 2004, Appellant appealed this decision. The court of appeals dismissed this appeal as interlocutory on January 13, 2005. Appellant filed a petition for rehearing, which was denied on May 25, 2005. On June 20, 2005, Appellant filed a petition for a writ of certiorari and a motion for sanctions against Respondents in this Court, which were denied.

On October 29, 2004, Appellant appealed the circuit court's decision to dismiss various motions filed there by Appellant because venue had been transferred to Richland County. On June 16, 2005, the court of appeals dismissed this appeal. On June 28, 2005, Appellant filed a petition for rehearing which was denied, and on April 14, 2006, Appellant filed another petition for a writ of

certiorari in this Court, which was denied on October 19, 2006.

The circuit court transferred venue back to Charleston County on March 29, 2007. At this time, the case returned to the circuit court, where discovery resumed, and Appellant filed various discovery-related motions. In March 2008, the circuit court denied Appellant's motions. Appellant appealed this decision to the court of appeals, which dismissed the appeal as interlocutory on August 12, 2008. Appellant filed a petition for rehearing, which was denied on November 21, 2008, and a petition for rehearing en banc, which the court of appeals denied. On January 10, 2009, Appellant filed a "Petition for Writ of Certiorari in Original Jurisdiction and Petition for Certiorari" in this Court, which this Court denied on April 23, 2009. Remittitur was issued on April 29, 2009.[9] Subsequently, Appellant filed a petition for rehearing, which this Court denied on May 13, 2009.

Trial commenced on June 8, 2009, despite Appellant's last minute attempts to obtain a continuance. Prior to trial, the circuit court heard Respondents' pending motion for summary judgment, which he denied because he did not have time on the eve of trial to review the extensive file in this case. On June 12, 2009, the circuit court granted Respondents' directed verdict as to all causes of action.[10] Respondents subsequently moved for sanctions against Appellant. On July 19, 2009, Appellant filed a motion for new trial. The circuit court held a hearing on the post-trial motions on September 29, 2009. By order dated November 18, 2009, the circuit court denied Appellant's motion for a new trial, and granted Respondents' motion for sanctions.

Appellant filed a Notice of Appeal. On December 2, 2009, this Court issued an order directing all clerks of court to refuse any filings by Appellant unless they were signed by a licensed South Carolina attorney. Therefore, the court of appeals dismissed Appellant's appeal for failure to obtain a signature by a licensed attorney on February 24, 2010. On March 10, 2010, current counsel for Appellant moved to reinstate the appeal. However, Appellant failed to file a brief in time.

---

[9] The instant case made its first trial roster appearance on April 8, 2008, and the clerk of court notified the parties of the transfer to the trial roster at that time. Pursuant to Rule 40(b), SCRCP, the circuit court issued a scheduling order stating the case would not go to trial before January 1, 2009.

[10] The circuit court signed a formal order to this effect on July 14, 2009.

Therefore, the court of appeals granted Respondents' motion to dismiss the appeal on June 10, 2011. Appellant filed another motion to reinstate the appeal on June 15, 2011, and filed an initial brief and designation of matter on July 14, 2011. On August 24, 2011, the court of appeals issued an order accepting those materials and reinstating the appeal.

This Court transferred the case pursuant to Rule 204(b), SCACR.

## ISSUES

I.   Whether Appellant timely commenced her action against Respondents Becker and Grier within the statute of limitations?

II.  Whether the circuit court erred in granting a directed verdict in favor of Respondents as to Appellant's legal malpractice claims?

III. Whether the circuit court erred in refusing to grant Appellant's motion for continuance?

IV.  Whether the circuit court erred in awarding sanctions against Appellant?

V.   Whether the circuit court erred in dismissing the other causes of action?

## ANALYSIS

## I. Statute of Limitations

Appellant argues that the circuit erred in finding that the claims against Respondents Becker and Grier were barred by the statute of limitations. We disagree.

Section 15-3-530 of the South Carolina Code provides for a three year statute of limitations for legal malpractice lawsuits. S.C. Code Ann. § 15-3-530 (2005). "The statute runs from the date the injured party either knows or should have known by the exercise of reasonable diligence that a cause of action arises from the wrongful conduct." *Dean v. Ruscon Corp.*, 321 S.C. 360, 363, 468 S.E.2d 645, 647 (1996) (citation omitted). "The exercise of reasonable diligence means

simply that an injured party must act with some promptness where the facts and circumstances of an injury would put a person of common knowledge and experience on notice that some right of his has been invaded or that some claim against another party **might** exist." *Epstein v. Brown*, 363 S.C. 372, 376, 610 S.E.2d 816, 818 (2005). "[T]he fact that the injured party may not comprehend the full extent of the damage is immaterial." *Dean*, 321 S.C. at 364, 468 S.E.2d at 647 (citation omitted).

In the instant case, as early as January 31, 2000, Appellant was openly critical of her attorneys' performance in a pro se filing in the district court:

> [My] Attorney, however, has not been timely: first taking months to schedule the Motion for Temporary Injunction; second not responding in a timely manner to your Honor's Scheduling order; third, not providing adequate representation and preparation of the case; and fourth, not notifying opposing counsel until the eleventh hour on January 4, 2000[,] of the request to reschedule the deposition which was made by letter dated December 17, 1999.

At that time, it is apparent that Appellant, an attorney, clearly should have known, and in fact *did* know, she had a potential claim against Respondents Becker and Grier, as these complaints appear to be the basis of her legal malpractice claim. Consequently, we find the statute of limitations began to run on January 31, 2000. *See Epstein*, 363 S.C. at 376, 610 S.E.2d at 818.

Appellant filed her Complaint against Respondents on April 1, 2002. However, Appellant did not timely serve her Complaint by forwarding it to the Richland County Sheriff's Department. *See* Rule 3(b), SCRCP ("For purposes of tolling the statute of limitations, an attempt to commence an action is equivalent to the commencement thereof when the summons and complaint are filed with the clerk of court *and delivered for service to the sheriff* of the county in which defendant usually or last resided . . . .") (emphasis added).[11]

---

[11] In 2002, the South Carolina legislature amended section 15-3-20 of the South Carolina Code. S.C. Code Ann. § 15-3-20 (Supp. 2002). The new provision provides that a civil action commences as of the date of filing if actual service is accomplished within 120 days after filing and became effective on May 24, 2002. *Id.* It only applies to causes of action filed on or after that date. *Id.* Therefore, the new rule does not operate to render Appellant's service effective. Regardless,

The circuit court found that Appellant did not deliver the summons and complaint to the Richland County Sheriff's Department until after April 30, 2003— more than three years after January 31, 2000, when the statute of limitations began to run.[12]

Appellant relies on the circuit court's order dated February 5, 2008, denying Respondents Becker and Grier's partial summary judgment motion based on non-service, claiming the circuit court found that they waived their objection to service and to the statute of limitations defense. While the circuit court did deny Respondents Becker and Grier's motion, the order makes no mention of waiver. Consequently, we hold Respondents Becker and Grier did not waive their right to assert the statute of limitations as a defense.

Appellant also argues that the circuit court should have tolled the statute of limitations after Respondents Becker and Grier appeared and subjected themselves to the personal jurisdiction of the court by responding to Appellant's complaint on May 1, 2002, and participating in a motion to dismiss for lack of jurisdiction and a motion to transfer venue.

We have never tolled the statute of limitations by the date on which a party subjects himself to the personal jurisdiction of the court, and we decline to do so here. We hold that the claims against Respondents are barred by the statute of limitations because Appellant did not deliver a summons and complaint to the Richland County Sheriff's Department until after April 30, 2003—more than three years after she should have known that she had a cause of action against Respondents Becker and Grier. *Epstein*, 363 S.C. at 376, 610 S.E.2d at 818. Thus, we now turn to whether the remaining claims against Haynsworth were also properly dismissed by the circuit court.

## II.  Merits of the Professional Malpractice Claim

---

Appellant failed to accomplish service within 120 days after filing.

[12] Respondents served Requests to Admit on Appellant addressing the issue of when Appellant forwarded the summons and complaint to the Richland County Sheriff's Department. Because the circuit court found Appellant's responses inadequate, the circuit court deemed these requests admitted for all purposes.

Appellant argues that the Court erred in granting a directed verdict to Respondents with respect to her legal malpractice claim. We disagree.

"In ruling on a motion for directed verdict, the trial court is required to view the evidence and the inferences which reasonably can be drawn therefrom in the light most favorable to the party opposing the motion and to deny the motion where either the evidence yields more than one inference or its inference is in doubt." *Harvey v. Strickland*, 350 S.C. 303, 308, 566 S.E.2d 529, 532 (2002) (citation omitted). "When considering directed verdict motions, neither the trial court nor the appellate court has authority to decide credibility issues or to resolve conflicts in the testimony or evidence." *Id.* (citation omitted). In essence, the Court "must determine whether a verdict for a party opposing the motion would be reasonably possible under the facts as liberally construed in his favor." *Id.* (citation omitted). "If the evidence is susceptible to more than one reasonable inference, the case should be submitted to the jury." *Quesinberry v. Rouppasong*, 331 S.C. 589, 594, 503 S.E.2d 717, 720 (1998) (citation omitted).

## A. Expert Testimony

First, Appellant argues the circuit court erroneously found that she failed to present expert testimony to support her malpractice claim. During trial, Appellant tendered herself as an expert regarding the applicable standard of care for professional malpractice. The circuit court disqualified Appellant as an expert witness, finding she lacked the requisite experience as an attorney to testify as an expert concerning the applicable standard of care in a federal anti-trust action. Appellant argues this decision was erroneous. We disagree.

"The qualification of an expert witness and the admissibility of an expert's testimony are matters within the trial court's discretion" and will not be overturned absent a finding of abuse of that discretion. *McGee v. Bruce Hosp. Sys.*, 321 S.C. 340, 344, 468 S.E.2d 633, 636 (1996) (citing *Creed v. City of Columbia*, 310 S.C. 342, 426 S.E.2d 785 (1993)). "An abuse of discretion occurs when the circuit court's rulings 'either lack evidentiary support or are controlled by an error of law.'" *Graves v. CAS Med. Sys., Inc.*, 401 S.C. 63, 74, 735 S.E.2d 650, 655 (2012) (quoting *State v. Pagan*, 369 S.C. 201, 208, 631 S.E.2d 262, 265 (2006)).

"If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." Rule 702, SCRE. Regardless of

whether the expert testimony is scientific, technical or otherwise, "all expert testimony must meet the requirements of Rule 702." *Graves*, 401 S.C. at 74, 735 S.E.2d at 655 (2012) (citing *State v. White*, 382 S.C. 265, 270, 676 S.E.2d 684, 686 (2009)).

> In determining whether to admit expert testimony, the court must make three inquiries. First, the court must determine whether "the subject matter is beyond the ordinary knowledge of the jury, thus requiring an expert to explain the matter to the jury." Second, the expert must have "acquired the requisite knowledge and skill to qualify as an expert in the particular subject matter," although he "need not be a specialist in the particular branch of the field." Finally, the substance of the testimony must be reliable.

*Id.* (internal citations omitted) (quoting *Watson v. Ford Motor Co.,* 389 S.C. 434, 446, 699 S.E.2d 169, 175 (2010)).

With respect to a legal malpractice claim, a claimant must rely on expert testimony to "establish both the standard of care and the deviation by the defendant from such standard." *Gilliland v. Elmwood Props.*, 301 S.C. 295, 301, 391 S.E.2d 577, 580 (1990) (citation omitted); *Smith v. Haynsworth, Marion, McKay & Geurard*, 322 S.C. 433, 435, 472 S.E.2d 612, 613 (1996); *Hall v. Fedor*, 349 S.C. 169, 174, 561 S.E.2d 654, 657 (Ct. App. 2002). In this regard, a claimant must establish, through expert testimony, the following:

(1) the existence of an attorney-client relationship;

(2) a breach of duty by the attorney;

(3) damage to the client; and

(4) proximate cause of the plaintiff's damages by the breach.

*Hall*, 349 S.C. at 174, 561 S.E.2d at 656. Furthermore, a claimant is required to demonstrate that "he or she 'most probably would have been successful in the underlying suit if the attorney had not committed the alleged malpractice.'" *Doe v. Howe*, 367 S.C. 432, 442, 626 S.E.2d 25, 30 (Ct. App. 2005) (quoting *Summer v. Carpenter*, 328 S.C. 36, 42, 492 S.E.2d 55, 58 (1997)). "The question of the success of the underlying claim, if suit had been brought, is a question of law." *Id.* (footnote omitted).

Appellant argues that the mere fact that she is a licensed attorney qualifies her as an expert in the field of the applicable standard of care in a federal anti-trust action.

Regardless of her status as a licensed attorney, Appellant was required to demonstrate to the circuit court's satisfaction that she had the requisite training, experience, and education to testify as an expert witness in this case. Although Appellant is a licensed attorney, we agree Appellant was unqualified to testify as an expert regarding the applicable standard of care for attorneys handling a federal antitrust lawsuit due to the mere fact that she is licensed to practice law. First, Appellant is a physician, and has not practiced law in over thirty years. She does not represent clients, and in fact, has never represented a client other than herself at various points in this litigation, and has never represented a client in federal court, let alone handled a federal anti-trust action. Under these undisputed facts, the circuit court did not abuse its discretion in disqualifying Appellant from testifying as an expert as to the standard of care in this case.[13]

As Appellant failed to present any expert testimony supporting her contention that Respondents breached their standard of care, Appellant was unable to satisfy her burden of proof, meaning there was no issue of fact to submit to the jury. As such, the record before the circuit court permitted only one reasonable inference—that Respondents did not breach the standard of care, and were entitled to a direct verdict.

## 2. Respondents' Expert Testimony

---

[13] Furthermore, Appellant misapprehends the "common knowledge" exception to the requirement for expert testimony. Under the common knowledge exception, expert testimony is not required where the common knowledge or experience of laymen is extensive enough to recognize or infer negligence on the part of the professional and to determine the presence of the required causal link between the professional's performance and the alleged malpractice. *Pederson v. Gould*, 288 S.C. 141, 142, 341 S.E.2d 633, 634 (1986). Here, Appellant overestimates the legal knowledge of a layperson to understand the complex issues of her case, including the intricacies of civil procedure, the standard for applying and granting injunctions, and how to successfully pursue a federal anti-trust claim. Therefore, we find that Appellant's claim does not fall within the exception.

Alternatively, Appellant argues that Respondents' own expert, Professor John Freeman, conceded they committed professional malpractice. More specifically, Appellant avers that Professor Freeman, "testified that what [R]espondents did when they threatened to prejudice the case in order to extract fees was consistent with extortion, a form of blackmail, and criminal in South Carolina." We disagree.

Professor Freeman's comments have been taken out of context. In his testimony, Professor Freeman repeatedly and unequivocally stated that he believed Respondents did not commit malpractice and nothing Respondents did in representing Appellant would have altered the result given applicable federal anti-trust law.[14] However, during Appellant's cross-examination of Professor Freeman, the following colloquy ensued:

> Q:   Do you believe that threatening a case in order to—threatening to prejudice a case in order to extract fees is—complies with the standard of care?
>
> A:   No, ma'am. Let me be real clear on this. I . . . consider that would be unethical. I consider that would be a form of blackmail or extortion and criminal in South Carolina to do that . . . .
>
> Q:   And isn't it true that if a contingency fee was in place, . . . then . . . forcing . . . the terms of this Addendum . . . would be a breach of the standard of care?

Respondents' counsel objected to the line of questioning, and the circuit court sustained the objection on the ground that Appellant assumed facts not in evidence, as Professor Freeman had already testified that there was no evidence of a contingency fee agreement between the parties.

Considering Professor Freeman answered a hypothetical question which was not based on the facts of this case, we find Appellant's reliance on this testimony is specious. Consequently, it cannot form the basis for establishing a breach of the

---

[14] For example, Professor Freeman testified, Appellant lost the "lawsuit because there was no case there—no federal antitrust case, and the judge found various technical, legal failings with the case."

standard of care.[15]

Thus, we affirm the circuit court's finding that Appellant's malpractice claim fails as a matter of law, and find the circuit court did not err in directing a verdict in favor of Respondents.

### III.  Continuance

Appellant argues that the circuit court erred in refusing to grant her a continuance, claiming the trial court set a trial date less than thirty days from the date of remittitur.  We disagree.

Rule 40(b), SCRCP, provides:

> The clerk initially shall place all cases in which a jury has been requested on the General Docket.  *A case may not be called for trial until it has been transferred to the Jury Trial Roster.  Trial shall be had no earlier than 30 days from the date the case first appears on the Jury Trial Roster.*  Cases shall be called for trial in the order in which they are placed on the Jury Trial Roster, *unless* the court in a Scheduling Order has set a date certain for the trial, *or, after the case has been set on the Jury Trial Roster, the court, upon motion, grants a continuance as provided in (i) below*.  The first 20 cases on the Jury Trial Roster at the opening of court on the first day of a term, excluding those previously dismissed, continued or otherwise resolved before the opening of that term of court, may be called for trial.

(Emphasis added).

The instant case first appeared on a trial roster on April 8, 2008, and the clerk of court notified the parties of the transfer to the trial roster at that time.  On that date, the circuit court issued a scheduling order stating the case would not be set for trial before January 1, 2009.  This Court denied certiorari after Appellant instituted interlocutory appeals stemming from a discovery order issued by the circuit court.  Remittitur was issued on April 29, 2009.  On May 1, 2009, Appellant

---

[15] In any event, Professor Freeman qualified his answer by explaining that there was no evidence of any contingency fee agreement between the parties in the instant case, and that he did not believe Respondent breached any standard of care.

filed a motion to strike the case from the jury trial roster. The Chief Administrative Judge for the Tenth Judicial Circuit denied Appellant's motion to strike, noting that the case first appeared on the trial roster in April 2008. Therefore, after this Court denied Appellant's petition for rehearing, the Chief Administrative Judge returned the case to the jury roster. On May 18, 2009, the case was called for trial. After granting Appellant a one-week continuance, the court set the case for a date-certain trial to begin on June 8, 2009. Appellant objected and filed numerous motions to delay the start of the trial, arguing that she needed additional time to prepare and arrange for her counsel to be present. The chief administrative judge noted Appellant had previously requested numerous continuances to obtain counsel, but had failed to do so in the past. Consequently, the circuit court denied Appellant's continuance request and allowed the case to proceed to trial on June 8, 2009.

Appellant argues that because the Court denied her motion on May 18, 2009, returning the case to the jury docket, the circuit court erred in commencing trial on June 8, 2009, less than thirty days from "remittitur." As stated previously, in actuality, remittitur was issued on April 29, 2009. Therefore, even assuming *arguendo* that Appellant's understanding of Rule 40(b) was correct, a trial date of June 8, 2009, fell more than thirty days after remittitur.

However, Appellant misapprehends Rule 40(b). Rule 40(b) provides, in pertinent part, that trial shall take place *no earlier* than 30 days from the date the case *first appears on the jury roster*. As stated, *supra*, Appellant's case first appeared on a trial roster on April 8, 2008. The mere fact that an appeals court touched the case does not re-start the cycle. Therefore, the trial date complied with Rule 40(b), SCRCP.

We further affirm the circuit court's denial of Appellant's request for a continuance. Under Rule 40(i)(1), SCRCP, a court may grant a continuance for cause as follows:

> As actions are called, counsel may request that the action be continued. If good and sufficient cause for continuance is shown, the continuance may be granted by the court. Ordinarily such continuances shall be only until the next term of court. Each scheduled calendar week of circuit court shall constitute a separate term of court.

As noted by the chief administrative judge, Appellant did not establish good and

56

sufficient cause to continue her case to the next term of court, as she had repeatedly requested a continuance on the same ground of failure to secure counsel, and no counsel appeared on her behalf.  Moreover, due to the relative age of the case, the circuit court was justified in disposing of it.  Therefore, we find the circuit court did not abuse its broad discretion in denying her request for a continuance.  *See Pyler v. Burns*, 373 S.C. 637, 650, 647 S.E.2d 188, 195 (2007) ("The grant or denial of a continuance is within the sound discretion of the trial judge and is reviewable on appeal only when an abuse of discretion appears from the record . . . . Moreover, the denial of a motion for a continuance on the ground that counsel has not had time to prepare is rarely disturbed on appeal.") (citations omitted); *State v. Lytchfield*, 230 S.C. 405, 409, 95 S.E.2d 857, 859 (1957) ("The granting or refusal of a motion for continuance is within the discretion of the trial judge and his disposition of such a motion will not be reversed on appeal unless it is shown that there was an abuse of discretion to the prejudice of appellant . . . . Review of them shows that reversals of refusal of continuance are about as rare as the proverbial hens' teeth.").

## IV.  Sanctions

Appellant argues the circuit court abused its discretion in awarding sanctions against her.  We disagree.

On November 18, 2009, the circuit court found Appellant's lawsuit to be frivolous, and awarded sanctions to Respondents.  The circuit court found Appellant was subject to sanctions based on the following: (1) both iterations of the South Carolina Frivolous Civil Proceedings Sanctions Action, S.C. Code Ann. §§ 15-36-10, et seq. (2005) and S.C. Code Ann. § 15-36-10 (Supp. 2012) (the FCPSA); (2) Rule 11, SCRCP; and (3) the court's inherent authority to award sanctions.

### A. The FCPSA

Because "the decision whether to impose sanctions under the FCPSA is a decision for the judge, not the jury, it sounds in equity rather than at law." *Father v. S.C. Dep't of Soc. Servs.*, 353 S.C. 254, 260, 578 S.E.2d 11, 14 (2003) (refusing to adopt the more deferential "abuse of discretion" federal standard of review in assessing decisions to impose sanctions under the FCPSA); *see also Se. Site Prep, L.L.C. v. Atl. Coast Builders & Contractors, L.L.C.*, 394 S.C. 97, 104, 713 S.E.2d 650, 653 (Ct. App. 2011) ("The determination of whether attorney's fees should be awarded under Rule 11 or under the [FCPSA] is treated as one in equity.").

57

Therefore, an appellate court reviews the findings of fact with respect to the decision to grant sanctions under the FCPSA by "taking its own view of the evidence." *Father*, 353 S.C. at 260, 578 S.E.2d at 14 (citing S.C. Const. art. V, § 5); *see also* S.C. Code Ann. § 14-3-320 (Supp. 2012). However, "[t]he 'abuse of discretion' standard . . . does . . . play a role in the appellate review of a sanctions award." *Father*, 353 S.C. at 261, 578 S.E.2d at 14. For example, "where the appellate court agrees with the trial court's findings of fact, it reviews the decision to award sanctions, as well as the terms of those sanctions, under an abuse of discretion standard." *Ex parte Gregory*, 378 S.C. 430, 437, 663 S.E.2d 46, 50 (2008) (citation omitted); *Se. Site Prep*, 394 S.C. at104, 713 S.E.2d at 654. "An abuse of discretion occurs where the decision is controlled by an error of law or is based on unsupported factual conclusions." *Father*, 353 S.C. at 261, 578 S.E.2d at 14.

As an initial matter, Appellant contends that the circuit court erred in sanctioning her under the 2005 revised version of the FCPSA, and argues that the circuit court should have instead relied on the pre-2005 version of the FCPSA, as she filed the original complaint in 2002. Therefore, she claims the circuit court erred in basing sanctions on her amended complaint, which she filed in 2007. To this end, Appellant argues that her amended complaint "relates back" to her original complaint pursuant to Rule 15(c), SCRCP. *See* Rule 15(c), SCRCP ("Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction or occurrence set forth or attempted to be set forth in the original pleadings, the amendment relates back to the date of the original pleading."). Therefore, Appellant contends, the action on which the sanctions were based was not a "new" action for purposes of dating the sanctions.

Regardless of the version applied, we find the circuit court did not err in sanctioning Appellant pursuant to the FCPSA.

Under the prior provisions of the FCPSA:

Any person who takes part in the procurement, initiation, continuation, or defense of any civil proceeding is subject to being assessed for payment of all or a portion of the attorney's fees and court costs of the other party if:

(1) he does so primarily for a purpose other than that of securing the proper discovery, joinder of parties, or adjudication of the claim upon which the proceedings are based; and

58

(2) the proceedings have terminated in favor of the person seeking an assessment of the fees and costs.

S.C. Code Ann. § 15-36-10 (2005).  Thus, the party seeking sanctions bears the burden of proving:

(1) the other party has procured, initiated, continued, or defended the civil proceedings against him;

(2) the proceedings were terminated in his favor;

(3) the primary purpose for which the proceedings were procured, initiated, continued, or defended was not that of securing the proper discovery, joinder of parties, or adjudication of the civil proceedings;

(4) the aggrieved person has incurred attorney's fees and court costs; and

(5) the amount of the fees and costs set forth in item (4).

*Id.* § 15-36-40.[16]

---

[16] In 2005, the General Assembly substantially amended section 15-36-10, and repealed sections 15-36-20 through -50.  *See* Act No. 27, 2005 S.C. Acts 114, § 5 (effective July 1, 2005) (revising § 15-36-10); Act No. 27, 2005 S.C. Acts 121, § 12 (effective March 21, 2005) (repealing §§ 15-36-20 through -50).

Section 15-36-10 now reads, in pertinent part:

At the conclusion of a trial and after a verdict for or a verdict against damages has been rendered or a case has been dismissed by a directed verdict, summary judgment, or judgment notwithstanding the verdict, upon motion of the prevailing party, the court shall proceed to determine if the claim or defense was frivolous.

S.C. Code Ann. § 15-36-10(C)(1) (Supp. 2012).

Here, the circuit court found:

As became evident throughout the trial, [Appellant] filed a non-meritorious and baseless lawsuit. Prior to filing suit, [Appellant] obviously conducted no serious investigation of the facts she would be required to prove to substantiate her wide-ranging claim. Rather, the entire tenor of [Appellant's] case appears to be her belief that she is right and her former lawyers and 4 other courts are all wrong. [Appellant] failed to develop any evidence that could satisfy her burden of proof at trial. Any reasonable attorney would conclude that [Appellant's] entire case was completely frivolous and was brought, and continued for seven years, without any reasonable basis.

[Appellant] engaged in dilatory litigation tactics and appealed numerous interlocutory matters, including orders regarding venue and several orders on discovery matters. These appeals were likewise frivolous and dilatory. [Appellant] also submitted numerous affidavits and memoranda accusing [Respondents] and [Respondents'] counsel of engaging in all manner of inappropriate and abusive conduct, each of which has been dismissed and discounted by the Court, and all of which were submitted without reasonable basis. [Appellant] has never accepted the rulings of the Court and has moved for reconsideration on each and every order denying whatever relief she sought, sometimes multiple times.

The Record supports the circuit court's finding that Appellant's claim was frivolous. However, Appellant argues that failure of the moving party to prevail on summary judgment under any circumstances precludes an award of sanctions pursuant to the the FCPSA based on the reasoning of *Hanahan v. Simpson*, 326 S.C. 140, 156–58, 485 S.E.2d 903 (1997).[17]

---

[17] In *Hanahan v. Simpson*, 326 S.C. 140, 156–58, 485 S.E.2d 903, 911–13 (1997), this Court overturned sanctions awarded against an appellant under the FCPSA. In *Hanahan*, the appellant, the daughter of the decedent, challenged the will left behind by her late father to dispose of his $48 million estate. 326 S.C. at 146, 485 S.E.2d at 906. She sued his estate alleging fraud, mistake, undue influence, and lack of testamentary capacity. *Id.* The estate moved for summary judgment, and the court denied the motion. *Id.* After a trial on the merits, the jury returned a verdict against the daughter, and the circuit court sanctioned the daughter pursuant

60

Even if Appellant's interpretation of *Hanahan* is correct, the circuit court also imposed sanctions pursuant to Rule 11, SCRCP, and we hold that Rule 11 sanctions were appropriate in this case.

Under Rule 11,

Every pleading, motion or other paper of a party represented by an attorney shall be signed in his individual name by at least one attorney of record . . . . The signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion or other paper; that to the best of his knowledge, information and belief there is good ground to support it; and that it is not interposed for delay . . . .

If a pleading, motion or other paper is not signed or does not comply with this Rule, it shall be stricken unless it is signed promptly after the omission is called to the attention of the pleader or movant. If a pleading, motion, or other paper is signed in violation of this Rule, the court, upon motion or upon its own initiative, may impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion or other paper, including a reasonable attorney's fee.

Rule 11(a), SCRCP.[18]

---

to the FCPSA. *Id.* On appeal, this Court acknowledged that there was a split of authority as to whether sanctions may be awarded under the FCPSA notwithstanding the denial of a summary judgment. *Id.* at 157, 485 S.E.2d at 912. Nevertheless, the Court reversed the circuit court's award of sanctions, reasoning that if the daughter's case survived a motion for summary judgment and was "submitted to the jury" because of its merits, "it cannot be deemed frivolous" later. *Id.*

[18] Because we find that sanctions were appropriately awarded pursuant to Rule 11, SCRCP, we do not reach the question of whether sanctions were appropriate according to the Court's inherent authority to award sanctions. *Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999)

The circuit court found that Appellant engaged in "dilatory litigation tactics," lodged "frivolous and dilatory appeals," filed affidavits and memoranda "without reasonable basis," and moved for reconsideration after nearly every ruling made by the circuit court. Without a doubt, the circuit court did not abuse its discretion in awarding sanctions against Appellant in this case. Therefore, we affirm.

## V. Remaining Issues

Appellant also claims the circuit court erred in directing a verdict in favor of Respondents on the issues of breach of contract, quantum meruit, breach of fiduciary duty, violation of the Unfair Trade Practices Act, abandonment, civil conspiracy, promissory estoppel, constructive fraud, conversion, negligent misrepresentation, negligent supervision, fraud, and misrepresentation. However, Appellant addresses neither the merits nor the law of these issues in her brief and merely mentions them in a laundry list of claims she presented to the circuit court. Thus, we find Appellant abandoned these arguments. *In re McCracken*, 346 S.C. 87, 92, 551 S.E.2d 235, 238 (2001) ("A bald assertion, without supporting argument, does not preserve an issue for appeal.") (citation omitted).

### CONCLUSION

For the foregoing reasons, the circuit court is

**AFFIRMED.**

**KITTREDGE and HEARN, JJ., concur. PLEICONES, J., concurring in a separate opinion in which BEATTY, J., concurs.**

---

(holding an appellate court need not address remaining issues when resolution of a prior issue is dispositive).

**JUSTICE PLEICONES:**  I concur but write separately as I view the proper disposition of several issues somewhat differently than does the majority.

The majority affirms the trial court's grant of a directed verdict to the individual respondents on the grounds of insufficient service.  As I understand the applicable law, however, these respondents waived their right to rely upon the belated service when they failed to raise the issue pursuant to Rule 12(h), SCRCP.  *See Garner v. Houck*, 312 S.C. 481, 435 S.E.2d 847 (1993).  Failure to properly raise this issue under the rule also operates as a waiver of a statute of limitations defense.  *Id.*; *see also Unisun Ins. v. Hawkins*, 342 S.C. 537, 537 S.E.2d 559 (Ct. App. 2000).  Assuming appellant has properly preserved this argument,[19] this directed verdict ruling was incorrect.

I am also uneasy with the Court's discussion of the trial court's ruling that appellant was not qualified to testify as an expert.  I fear the majority's opinion may be read to require a legal expert to have experience in the exact area of law that is the subject of the malpractice claim.  Heretofore, we have not required such congruity.  *See Gooding v. St. Francis Xavier Hosp.*, 326 S.C. 248, 487 S.E.2d 596 (1997) (medical expert qualifications).  With the caveat that an individual need not have practical experience in the exact same type of case in order to be qualified as an expert, I agree that there was no abuse of discretion in the trial court's decision not to qualify appellant as a legal expert. *Gooding*, *supra* (qualification of expert is within trial court's discretion).  I therefore agree that the directed verdict should be affirmed as to both the firm and the individual respondents.

I agree with the majority that appellant cannot complain that Rule 40(b), SCRCP, was violated where more than 30 days passed after the remittitur was returned before the case was called for trial.  Further, I agree with appellant that the original version of the FCPSA and not the amended version applies here.  *See* 2005 S.C. Acts No. 27 § 16(3) 123 (revised FCPSA applies to causes of action arising on or after July 1, 2005).  Thus the trial court erred as a matter of law in awarding sanctions under the FCPSA.  *Hanahan v. Simpson*, 326 S.C. 140, 485 S.E.2d 903 (1997).  I agree, however, that we should affirm the award of sanctions under Rule 11, SCRCP.

---

[19] To the extent her argument rests on the circuit court's March 2008 denial of the individual respondents' motion for summary judgment, appellant's argument fails as a matter of law.  *E.g. Ballenger v. Bowen*, 313 S.C. 476, 443 S.E.2d 379 (1994).

I concur in the result reached by the majority.

**BEATTY, J., concurs.**